Jordan A. Kroop (AZ Bar No. 018825)
Thomas Ryerson (AZ Bar No. 028073)
Janet M. Howe (AZ Bar No. 034615)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix AZ 85012
(602) 351-8000
Email: jkroop@perkinscoie.com
      tryerson@perkinscoie.com
      jhowe@perkinscoie.com
      DocketPHX@perkinscoie.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Stacy Satzman;<br>Daniel Brinauer;<br>Bonnie Huffman;<br>and all those similarly situated;<br><br>    Plaintiffs,<br><br>vs.<br><br>David Shinn, Director of the Arizona Department of Corrections Rehabilitation & Reentry, in his official capacity;<br>Arizona Department of Corrections Rehabilitation & Reentry;<br><br>    Defendants. | Case No.<br><br><br><br><br><br>**COMPLAINT** |

Plaintiffs Stacy Satzman, Daniel Brinauer, and Bonnie Huffman, on behalf of themselves and all other similarly situated persons, allege:

### INTRODUCTION

1. Plaintiffs are Jewish and Muslim prisoners, currently incarcerated in various state prisons within the Arizona Department of Corrections, Rehabilitation

& Reentry ("**ADC**"), who require a strict kosher diet to comply with their sincerely-held religious beliefs. Until recently, Plaintiffs were receiving meals that generally, although imperfectly, complied with the strictures of Jewish dietary law ("**kosher meals**"). But on August 1, 2020, ADC implemented a new policy that replaced these kosher meals with so-called "common fare meals"—purely vegan meals devoid of any animal protein or animal products, deficient in quality, quantity, and variety. ADC knows or should know that these common fare meals are not kosher, and, by serving them, they force Plaintiffs—and dozens of other Jewish prisoners—to violate their core religious beliefs.

2. Plaintiffs bring this lawsuit on behalf of themselves and a class of similarly-situated individuals ("**Class Members**")[1] to challenge ADC's replacement of kosher meals with a common fare meal as it violates the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc ("**RLUIPA**") and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

3. Observing Jewish dietary law ("**keeping kosher**") has for thousands of years been a central tenet of Judaism.[2] ADC's refusal to provide kosher meals to these prisoners substantially burdens their religious exercise without advancing any compelling penal interest.

4. ADC's newly-adopted dietary policy is anomalous among American correctional institutions. The Federal Bureau of Prisons and most state departments of correction throughout the United States offer kosher meals to all prisoners with a religious basis for keeping kosher. ADC has already demonstrated that it can

---

[1] The Class Members are further defined as "all past, present, and future ADC inmates who require kosher meals to comply with sincerely held religious beliefs and are provided non-kosher common fare meals." *See infra* ¶ 51.

[2] This is also true of followers of Islam (who require kosher food when halal food is unavailable) and other religious traditions observed by individuals incarcerated at ADC facilities.

provide kosher meals consistent with its compelling penal interests—before August of this year, it did so for many years. Abandoning its previous kosher meal policy is a misguided and illegal step in the wrong direction, which this suit is to right.

5.     Plaintiffs seek declaratory and injunctive relief to enjoin ADC from continuing to deny them kosher meals in violation of federal law. Without the relief sought in this lawsuit, ADC's dietary plans will prevent inmates from exercising the religious freedoms protected by RLUIPA and the U.S. Constitution.

### PARTIES

6.     Plaintiff Stacy Satzman is a Jewish inmate currently incarcerated in the Winchester Unit in ASPC Tucson, located in Tucson, Arizona. [Declaration of Stacy Satzman ("Satzman Declaration"), ¶ 2, attached as Exhibit 1] His sincerely-held religious beliefs require him to keep kosher, and ADC previously approved him for a kosher diet. [*Id*. ¶¶ 3–4] In July 2020, he was notified that his kosher diet would be replaced with the common fare diet. [*Id*. ¶ 12] He is not vegan or vegetarian, and his beliefs do not command him to eat a vegan or vegetarian diet. [*Id*. ¶ 14]

7.     Plaintiff Daniel Brinauer is a Jewish inmate currently incarcerated in the Santa Rita Unit in ASPC Tucson, located in Tucson, Arizona. [Declaration of Daniel Brinauer ("Brinauer Declaration"), ¶ 2, attached as Exhibit 2] His sincerely-held religious beliefs require him to keep kosher, and ADC previously approved him for a kosher diet. [*Id*. ¶¶ 3–4] In July 2020, he was notified that his kosher diet would be replaced with the common fare diet. [*Id.* ¶ 11]He is not a vegan or a vegetarian, and his beliefs do not command him to eat a vegan or vegetarian diet.

8.     Plaintiff Bonnie Huffman is a Jewish inmate currently incarcerated in ASPC Perryville, located in Goodyear, Arizona. Her sincerely-held religious beliefs require her to keep kosher, and ADC previously approved her for a kosher diet. In July 2020, she was notified that her kosher diet would be replaced with the common

fare diet. She is not vegan or vegetarian, and her beliefs do not command her to eat a vegan or vegetarian diet.

9. Defendant David Shinn, Director of the ADC, is the ultimate decision-maker with authority to approve all ADC policies, including dietary policies. He is sued in his official capacity.

10. Defendant ADC manages ten state prisons and six private facilities. On information and belief, ADC currently incarcerates approximately 50 Jewish inmates and scores of other inmates that require a kosher diet for religious reasons.

11. ADC receives federal funding and is an "institution" within the meaning of 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action under 28 U.S.C. § 1331.

13. The declaratory and injunctive relief sought by Plaintiffs is authorized by 42 U.S.C. § 2000cc-2(f) and 28 U.S.C. §§ 2201 and 2202.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

15. ADC is required to provide Plaintiffs and Class Members a diet that does not violate Jewish dietary laws ("**kashruth**") or Islamic dietary laws, and which sustains them in good health. Before August 1, 2020, ADC provided kosher meals to Plaintiffs and Class Members consistent with this mandate. [Ex. 1 (Satzman Declaration), ¶¶ 5–10; Ex. 2 (Brinauer Declaration), ¶¶ 5–8]

16. On August 1, 2020, ADC permanently replaced all kosher meals—meals relied on to meet Plaintiffs' sincerely held religious beliefs and the sincerely held religious beliefs of, among others, many other Jewish and Muslim inmates within ADC—with non-kosher common fare meals, violating Plaintiffs' and Class Members' federal rights. [ADC Notification 20-15 (July 2, 2020), attached as Exhibit 3]

17.     ADC's dietary policy places a substantial burden on religious exercise that is not necessary to achieve any compelling state interest. Indeed, on information and belief, the Federal Bureau of Prisons and most state corrections departments offer kosher meals while advancing penological interests indistinguishable from ADC's.

18.     That ADC previously served kosher meals is further evidence that ADC can provide these meals consistent with its penological interests but has now chosen to withhold kosher meals, substantially burdening inmates' religious excise without advancing any compelling state interest.

19.     To remedy these violations, ADC must immediately cease serving common fare meals in place of kosher meals that comply with Plaintiffs' and Class Members' sincerely held religious beliefs and restore a program that provides genuinely kosher meals to Plaintiffs and Class Members.

### ADC Previously Provided Kosher Meals to Inmates.

20.     Until August 1, 2020, ADC—like the Federal Bureau of Prisons and most state correctional institutions—offered kosher meals to all prisoners who requested them for religious reasons (the "**Pre-August 2020 Kosher Meals**"). [Ex. 1 (Satzman Declaration), ¶¶ 5–10; Ex. 2 (Brinauer Declaration), ¶¶ 5–9] These meals met the requirements of kashruth, as discussed in the following paragraphs.

21.     Kashruth requires strict separation of meat and poultry from dairy products, which cannot be consumed together in the same meal or prepared and served in common vessels or with common utensils. A kosher meal will either be a meat meal or a dairy meal—never both. [Declaration of Rabbi Eli Putney ("Rabbi Putney Declaration"), ¶15, attached as Exhibit 4]

22.     To satisfy this requirement, Pre-August 2020 Kosher Meals included a wide variety of dairy and meat products that were served separately, such as milk,

tuna, cottage cheese, eggs, various kosher meats, and sliced kosher cheese. [Ex. 1 (Satzman Declaration), ¶ 8; Ex. 2 (Brinauer Declaration), ¶ 7]

23. Kashruth states that placing kosher food in or on containers, trays, or plates, or processing kosher food in kitchen appliances, that have previously been used for non-kosher food renders the kosher food unkosher and inedible. Similarly, using utensils that have previously been used to consume or prepare non-kosher food with kosher food renders the kosher food unkosher and inedible. [Ex. 4 (Rabbi Putney Declaration), ¶ 14]

24. To satisfy this requirement, Pre-August 2020 Kosher Meals were purchased shelf stable or frozen, similar to TV dinners. Because they were double-sealed, the prison staff could heat them, still sealed, in the non-kosher microwave or oven without impacting the kosher status of the food itself. [Ex. 1 (Satzman Declaration), ¶ 8; Ex. 2 (Brinauer Declaration), ¶ 7]

25. ADC served Pre-August 2020 Kosher Meals unopened, on separate, kosher-only trays, and inmates ate the meals with disposable utensils suitable for one-time use to consume kosher food without defeating the kosher status of the food. [Ex. 1 (Satzman Declaration), ¶ 9; Ex. 2 (Brinauer Declaration), ¶ 8]

26. With certain exceptions limited to specific fruits and vegetables, all food must bear a hechsher to be regarded as kosher and fit to eat. [Ex. 4 (Rabbi Putney Declaration), ¶ 13]

27. To satisfy this requirement, prepackaged meals and food products served in Pre-August 2020 Kosher Meals bore hechshers—a stamp, emblem, or icon indicating one of many kosher-certifying agency's rabbinical endorsements of the facility used for, and method of, the food's preparation and packaging and official certification verifying that the food products conform with kashruth. [Ex. 1 (Satzman Declaration), ¶ 10; Ex. 2 (Brinauer Declaration), ¶ 9]

28. On information and belief, ADC served Pre-August 2020 Kosher Meals to hundreds of inmates, on average approximately 50 inmates per ADC facility.

29. The Pre-August 2020 Kosher Meals largely complied with kashruth, and by extension many Islamic dietary laws, and allowed Plaintiffs and Class Members to practice their religion unburdened while eating a healthful diet sufficient in quantity, quality, and variety.

30. On July 2, 2020, a mere 30 days before ADC's new "common fare" policy went into effect, ADC announced its abrupt shift to a common fare meal plan that replaced the Pre-August 2020 Kosher Meals for all inmates requesting and receiving religious diets.

31. On information and belief, ADC provided no explanation justifying this change.

### The Common Fare Meal is Not Kosher.

32. The common fare meal plan is a vegan, plant-based diet that heavily relies on beans, hummus, nut butters, and soy-based imitation meats. [Ex. 1 (Satzman Declaration), ¶ 13; Ex. 2 (Brinauer Declaration), ¶ 12]

33. The common fare meal is inferior to both the previous kosher diet and the general inmate diet in quantity, quality, and variety. [Ex. 1 (Satzman Declaration), ¶ 15; Ex. 2 (Brinauer Declaration), ¶ 13]

34. The common fair meal is not kosher simply because it contains neither meat nor dairy food. Kashruth requires kosher meals—even those containing only plant-based food—to meet specific, religiously-prescribed standards for both acceptable sources of food *and* methods of food preparation, packaging, and service. [Ex. 4 (Rabbi Putney Declaration), ¶ 8] As discussed below, the common fare meal falls short of several of these requirements.

35. **The common fare meal plan regularly includes food items that are not kosher.** [Ex. 1 (Satzman Declaration), ¶¶ 23–26; Ex. 2 (Brinauer Declaration), ¶¶ 20–24] It is not the case that simply serving a limited set of foods—primarily fruits and vegetables—satisfies the requirements of Kashruth.

   a. Many unprocessed fruits and vegetables are generally kosher when harvested but lose their kosher status if they are handled improperly, cut or peeled using knives or utensils previously used for non-kosher food, prepared using equipment previously used for non-kosher food, or improperly washed. [Ex. 4 (Rabbi Putney Declaration), ¶ 9]

   b. Many fruits and vegetables such as most lettuce, spinach, kale, strawberries, cauliflower, broccoli, and raspberries remain contaminated by small insects after post-harvest washing, rendering those items non-kosher. [*Id.* ¶ 10]

   c. As a result, fruits, vegetables, and other processed vegan or vegetarian products must be carefully inspected, handled, and prepared in a manner that ensures no insect infiltration in the final product. [*Id.* ¶¶ 10–11]

   d. Because there is a high probability that some insect may be incorporated in most commercially grown produce and manufactured vegan products, these products should not be considered kosher absent a kosher control point. [*Id.* ¶ 11]

36. **Not all common fare meals bear a Hechsher or other indication of kosher certification.** [Ex. 1 (Satzman Declaration), ¶ 23; Ex. 2 (Brinauer Declaration), ¶ 20] Because common fare shelf-stable meals frequently contain food products that do not bear a Hechsher, they cannot be reasonably regarded as kosher. [Ex. 4 (Rabbi Putney Declaration), ¶ 13]

37. **The common fare meal is not prepared, packaged, or served consistent with kashruth.** [Ex. 1 (Satzman Declaration), ¶¶ 27–32; Ex. 2 (Brinauer Declaration), ¶¶ 25–26]

   a. Kosher food can quickly become non-kosher if it is (i) mixed with non-kosher food; (ii) cooked in or prepared using pots, pans, or utensils that have been used in the preparation of non-kosher food; (iii) cooked in an oven used for non-kosher food; or (iv) brought into contact with pots, pans, containers, or utensils that were cleaned in a dishwasher also used for non-kosher kitchen items. [Ex. 4 (Rabbi Putney Declaration), ¶ 14]

   b. Many items ADC includes in its common fare meals are not prepared with kosher-designated food preparation utensils and materials. [Ex. 1 (Satzman Declaration), ¶ 28; Ex. 2 (Brinauer Declaration), ¶ 26]

   c. ADC prepares common fare meals in the same kitchen, using the same appliances, surfaces, and utensils utilized for non-kosher foods, rendering the common fare meals non-kosher. [Ex. 1 (Satzman Declaration), ¶ 28; Ex. 2 (Brinauer Declaration), ¶ 26]

   d. To transition food preparation and service materials from non-kosher to kosher use, those materials must be "**kashered**"—an exacting and detailed process derived from biblically prescribed methods taken from Jewish law, that requires among many other things, oversight by a person intimately familiar with kashruth. [Ex. 4 (Rabbi Putney Declaration), ¶ 17]

   e. Simple washing, running through a dishwasher, or other common kitchen sterilization techniques do not constitute proper kashering. [*Id.* ¶ 18] Several types of common kitchen tools and containers once used for non-kosher food cannot be kashered. Once these items have

    been used for non-kosher use, they cannot ever be used with kosher food. [*Id.* ¶ 19]

  f. ADC falsely believes that "sterilizing" these preparation and service supplies in between non-kosher and kosher uses by washing them in the dishwasher suffices for kashruth purposes. [Ex. 1 (Satzman Declaration), ¶ 32]

38. The common fare diet is thus not kosher because (a) it serves many food items that are not kosher; (b) it serves many food items that lack hechshers; and (c) it is prepared and served with materials that have not been designated kosher or properly kashered after non-kosher use.

39. Generally, no food processed, produced, prepared, or handled in any public facility may be considered kosher unless that facility is under constant supervision of an Orthodox rabbi. Orthodox supervision is required because Orthodox adheres to the highest stringencies and standards of kashruth. Therefore, only Orthodox supervision provides reasonable assurance to all kosher meal participants that the food included within the kosher meal plan is, in fact, kosher. [Ex. 4 (Rabbi Putney Declaration), ¶¶ 20–21]

### ADC's Dietary Policy Unlawfully Burdens Religious Exercise.

40. Plaintiffs and Class Members cannot follow the dictates of their religion when forced to consume ADC's common fare diet. [Ex. 1 (Satzman Declaration), ¶ 34; Ex. 2 (Brinauer Declaration), ¶ 31] As a result, three times a day, seven days a week, Plaintiffs and Class Members must choose between hunger and violating their sincerely held religious beliefs.

41. ADC's promulgation and enforcement of the common fare diet therefore substantially burdens religious exercise by denying Plaintiffs and Class Members the diet ascribed by the fundamental tenets of Judaism and other religions practiced by ADC inmates.

42. Among the class of interested persons are halal-observant Muslims. Halal, like kosher, is a set of religious dietary rules.[3] In relevant part, Muslims may only eat meat that has been slaughtered according to certain rules and may not eat certain sources of meat—most notably, pork or pork byproduct.

43. While some Muslims choose to only eat meat which has been slaughtered by a Muslim and pursuant to Quranic rules, many others—including many inmates at ADC—believe that food from "people of the Book" (that is, Jews and the Torah) is acceptable. This has come to be understood as kosher meat. Support for this position is drawn from a verse in the Quran. Surah Maidah, verse 5: "[t]his day [all] good foods have been made lawful, and the food of those who were given the Scripture is lawful for you …"

44. As a result, many Muslims in state prison systems and the Federal Bureau of Prisons alike receive kosher meals. Muslim inmates in ADC consistently requested and received kosher meals until the switch to the common fare meal.

45. Neither the common fare nor the general-inmate meals that include meat are appropriate or satisfactory for Muslims inmates. In the absence of a halal meal plan, only kosher meals will suffice.

46. Certain non-Jewish and non-Muslim inmates have also historically requested kosher meals to meet the dictates of their sincerely held religious beliefs. Certain Christians, for example, believe themselves to be religiously obligated in kashruth—the laws of which are contained in what Jews refer to as the Torah and what Christians refer to as the Old Testament of the Bible.

**ADC Lacks a Compelling Interest to Burden Plaintiffs' Religious Exercise.**

47. As evidenced by years of practice, ADC can provide kosher meals consistent with its penological interests.

---

[3] The term halal can also refer to permissible, non-dietary activities but for purposes of this Complaint will be used to refer to dietary needs alone.

48. Indeed, facilities with indistinguishable interests—like other state corrections facilities and the Federal Bureau of Prisons—are also able to provide kosher meals consistent with all penological interests.

49. ADC lacks a compelling interest to justify the burden it has placed on religious exercise.

### CLASS ACTION ALLEGATIONS

50. Plaintiffs, on behalf of themselves and Class Members, bring their claims for declaratory and injunctive relief as a class action under Fed. R. Civ. P. 23(a) and 23(b)(2).

51. Plaintiffs request that the Court certify the following Class under Fed. R. Civ. 23(b)(2):

> **All past, present, and future ADC inmates who require kosher meals to comply with sincerely held religious beliefs and are provided non-kosher common fare meals.**

52. Plaintiffs are adequate representatives of the Class. Plaintiffs are Jewish individuals who must keep kosher as dictated by their sincerely held religious beliefs and who receive a non-kosher common fare diet instead, in violation of RLUIPA and the Equal Protection Clause.

53. The Class satisfies the requirements of Fed. R. Civ. P. 23(a)(1) because the Class is so numerous that joinder of all members is impracticable. The total number of ADC prisoners (Jewish, Muslim, and otherwise) who keep kosher or require a kosher diet to adhere to sincerely held religious beliefs is unknown, and it would be difficult to find and join all Class Members in the 16 ADC facilities across the state of Arizona. In addition, class certification is also appropriate because of the transient nature of the ADC population and the fact that the Class

will include an unknown number of individuals who may be denied kosher meals in the future.

54. The Class satisfies the commonality requirements of Fed. R. Civ. P. 23(a)(2) because there are questions of law and fact common to the Class, including (i) whether ADC's common fare meal plan substantially burdens a sincerely held religious belief that require adherence to a kosher diet; and (ii) whether ADC has a compelling interest for offering a common fare meal instead of a kosher meal.

55. The Class satisfies the typicality requirements of Fed. R. Civ. P. 23(a)(3) because the named Plaintiffs' claims are typical of the claims of the Class. Plaintiffs are individuals who are being denied a kosher diet and provided a common fare meal in violation of their sincerely held religious beliefs. Plaintiffs and Class Members share the same legal claims under RLUIPA and the Equal Protection Clause.

56. The Class satisfies the adequacy requirements of Fed. R. Civ. P. 23(a)(4) because the Class representatives will fairly and adequately represent the interests of the Class. The named Plaintiffs seek the same declaratory and injunctive relief as the other Class Members: a declaratory judgment that the common fare meal policy violates RLUIPA and the Equal Protection Clause, and preliminary and permanent injunctions enjoining Defendants from enforcing the common fare diet policy. The named Plaintiffs seek this relief to benefit themselves and to protect other inmates who request a kosher diet for religious reasons. In asserting their own rights, the named Plaintiffs will vindicate the rights of all Class Members fairly and adequately. The Class representatives have no interests that are antagonistic to interests of other Class Members.

57. The Class further satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because counsel for the Class will fairly and adequately represent the interests of the Class. The Class is represented by counsel from Perkins Coie, LLP, a national

law firm with significant experience litigating prisoner civil rights cases, including cases related to the religious rights of inmates and complex class actions in federal court. One of Perkins Coie's lead counsel in this matter is a kosher-keeping Jew intimately familiar with the laws of kashruth and the centrality of keeping kosher to a Jewish life.

58. The Class also satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive or corresponding declaratory relief is appropriate respecting the Class. The Class is sufficiently cohesive because its members have suffered group, as opposed to individual, injuries—namely the categorical replacement of kosher meals with common fare meals. Class Members are bound together by the common traits that they are prisoners who request kosher meals to comply with their sincerely held religious beliefs.

59. By definition, members of the Class are inmates who would otherwise have difficulty affording or accessing counsel to individually challenge the denial of kosher meals. Further, litigation of these claims on an individual basis would be a waste of judicial resources and risk inconsistent resolution in separate courts.

## COUNT 1

### (VIOLATION OF RLUIPA, 42 USC § 2000CC)

Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1-59 as if fully set forth here.

60. Defendants provide Plaintiffs and Class Members common fare meals instead of kosher meals, which requires Plaintiffs and Class Members to violate their sincerely held religious beliefs.

61. Defendants' dietary policy constitutes a substantial burden on Plaintiffs' and Class Members' religious exercise.

62. Defendants lack a compelling interest to justify the burden on religious exercise.

63. Accordingly, Defendants have violated and continue to violate RLUIPA, 42 U.S.C. § 20 U.S.C. 2000cc.

## COUNT 2

### (VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION)

Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1-59, as if fully set forth here.

64. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits Defendants from denying Plaintiffs and Class Members equal protection of the laws.

65. As applied, Defendants' common fare meal plan impermissibly discriminates against Plaintiffs and Class Members based on their religious beliefs, because it forces Plaintiffs and Class Members to either abandon their religious beliefs or consume a diet that is deficient in quantity, quality, and variety, as compared with the meals Defendants provide to other inmates.

66. Defendants' common fare meal plan does not serve any compelling purpose sufficient to justify denying Plaintiffs' constitutional rights.

67. Accordingly, Defendants' promulgation and continued enforcement of the common fare meal plan violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

A. Certify a class consisting of: all past, present, and future ADC inmates who require kosher meals to comply with sincerely held religious beliefs and are

provided non-kosher common fare meals, in violation of RLUIPA and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

  B. Name Plaintiffs as representatives of the Class, and appoint Plaintiffs' counsel as Perkins Coie, LLP.

  C. On behalf of Plaintiffs and all similarly situated individuals, issue preliminary and permanent injunctions prohibiting Defendants, their officers, agents, employees, subordinates, successors in office, and all those acting in concert or participation with them to provide prisoners in their custody with nutritionally sufficient kosher meals.

  D. Declare that Defendants have violated RLUIPA and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution by failing to offer kosher meals to prisoners in their custody who desire a kosher diet to exercise their religious beliefs; and

  E. Order any additional relief as the interests of justice may require.

Respectfully submitted,

December 10, 2020  **PERKINS COIE LLP**

By: */s/ Jordan A. Kroop*
Jordan A. Kroop (#018825)
Thomas Ryerson (#028073)
Janet M. Howe (#034615)
2901 North Central Avenue, Suite 2000
Phoenix AZ 85012
jkroop@perkinscoie.com
tryerson@perkinscoie.com
jhowe@perkinscoie.com

*Attorneys for Plaintiffs*

139721-0001/150159911.4